# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

SELENA DUNSON,  :

                Plaintiff,

-vs-

HOOVEN-DAYTON CORP.,

                Defendant.  :

Case No. 3:10-cv-441

Magistrate Judge Michael R. Merz

## DECISION AND ORDER

This case is before the Court on Defendant Hooven-Dayton Corp.'s Motion for Summary Judgment. (Doc. 30). The parties have fully briefed the issues, (*Id.,* Doc. 37, 44, 46), and the matter is ripe for decision on the merits.

The parties have consented to plenary magistrate judge jurisdiction pursuant to 28 U.S.C. 636 (c) and District Judge Rice has referred the matter on that basis. (Doc. 18).

Plaintiff Selena Dunson filed this action against her former employer, Hooven-Dayton, alleging that Hooven-Dayton discriminated against her on the basis of her race, African-American, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e). (Doc. 2). In addition, Ms. Dunson brought state law claims for negligent infliction of emotional distress and intentional infliction of emotional distress. *Id.* The Court previously dismissed Ms. Dunson's claim for negligent infliction of emotional distress. (Doc. 6, 9).

The Court notes that Ms. Dunson is proceeding *pro se* in this matter. The allegations of a pleadings drafted by a *pro se* litigant are held to less stringent standards than formal pleadings

drafted by lawyers, and are to be liberally construed. *See Williams v. CSX Transportation Co., Inc*. 643 F.3d 502, 510 (6th Cir, 2011), citing *Federal Exp. Corp. v, Holowecki,* 552 U.S. 389, 402 (2008); see also, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *McNeil v. United States,* 508 U.S. 106, 113 (1993). However, federal courts have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel. *McNeil v. United States,* 508 U.S. 106, 113 (1993). Even *pro se* litigants must comply with minimum pleading requirements. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

2

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed. R. Civ. P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id*. The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249-250 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp*., 964 F.2d 577, 582 (6th Cir. 1992)(quoting *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir. 1986). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's evidence concerns a material issue and is more than de minimis. *Hartsel v. Keys*, 87 F.3d 795 (6th Cir. 1996). "On summary judgment," moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249.

The moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes

3

demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323; *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Alexander v. Caresource,* 576 F.3d 551 (6th Cir. 2009), citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587; *Martin v. Ohio Turnpike Comm'n.*, 968 F.2d 606, (6th Cir. 1992).

In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.,* 260 F.3f 574, 581 (6th Cir. 2001). "Materiality is determined by the substantive law claim." *Boyd v. Baeppler,* 215 F.3d 594, 599 (6th Cir. 2000). An issue is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.,* 14 F.3d 1143, 1148 (6th Cir. 1994), quoting *Anderson,* 477 U.S. at 248. Irrelevant

4

or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala,* 205 F.3d 937, 943 (6th Cir. 2000). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Simmons-Harris v. Zelman,* 234 F.3d 945, 951 (6th Cir. 2000), *rev'd on other grounds,* 536 U.S. 639 (2002). Thus, a factual dispute which is merely colorable or is not significantly probative will not defeat a motion for summary judgment which is properly supported. *Kraft v. United States,* 991 F.2d 292, 296 (6th Cir.), *cert. denied* 510 U.S. 976 (1993); *see also, Int'l Union United Auto., Aerospace & Agriculture Implement Workers of America v. BVR Liquidating, Inc.,* 190 F.3d 768, 772 (6th Cir. 1999), *cert. denied* 529 U.S. 1076 (2000).

The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street,* 886 F.2d at 1479. A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the [non-moving party]." *Anderson,* 477 U.S. at 252. If, after sufficient opportunity for discovery, the non-moving party is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp.,* 477 U.S. at 322-23. "The failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Alexander v. Caresource,* 576 F.3d 551 (6th Cir. 2009), quoting *Everson v. Leis,* 556 F.3d 484, 496 (6th Cir. 2009) (citing *Skousen v. Brighton High School*, 305 F.3d 520, 528 (6th Cir. 2002)).

With these principles in mind, the facts of this case construed in the light most favorable for Ms. Dunson and for purposes of the present motion are as follows.

5

Hooven-Dayton is a subsidiary of Che International Group, LLC and its business is to provide short to medium run, fast turn customized print solutions for customers. Affidavit of Jennifer Monahan[1], Jan. 19, 2012 (Monahan Aff.) (Doc. 30, Attachment 1 thereto; PageID 149). Prior to being hired in late June, 2009, Ms. Dunson had worked for Hooven-Dayton as Accounting Data Entry Clerk for about one month as a temporary employee through a staffing agency. *Id.*, PageID 150. During that time, Ms. Dunson's predecessor, Cheron Jones, a temporary employee who had worked for Hooven-Dayton for about three weeks, trained Ms. Dunson. *Id.*; Affidavit of Selena Dunson, Feb. 26, 2012 (Dunson Aff.) (Doc. 37; PageID 488). Ms. Jones told Ms. Dunson that she herself did not know the job very well. *Id.*

On June 29, 2009, Ms. Monahan interviewed Ms. Dunson and hired her for the position of Accounting Data Entry Clerk. Monahan Aff., PageID149. During the employment interview, Ms. Monahan told Ms. Dunson that Hooven-Dayton was hiring Blacks because Hooven-Dayton was trying to get government grants. Dunson Aff., PageID 488. During the term of her employment with Hooven-Dayton, Ms. Dunson reported to Ms. Monahan. Monahan Aff., PageID 149.

The position of Accounting Data Entry Clerk required Ms. Dunson to enter time from time sheets and run reports to check for accuracy, enter material use from material use sheets and run reports to check for accuracy, enter finished goods from material rewind sheets and Lottery, close jobs as needed, update spreadsheets, record temporary labor in spreadsheets, print and review daily package and daily operator reports for accuracy, and perform ther tasks as assigned. *Id.,* PageID 150.

---

[1] Hooven-Dayton has employed Ms. Monahan as the Accounting Manager since September 2005 and in 2007, Hooven Dayton added the position of Human Resources Manager to Ms. Monahan's responsibilities. *Id.*

In early July 2009 Ms. Monahan discussed with Ms. Dunson what Ms. Monahan determined were deficiencies in Ms. Dunson's job performance. *Id.* Ms. Monahan identified those deficiencies as, *inter alia,* missing data, transposing numbers, keying incorrect dates and employee numbers, and attempting to correct entries by reversing them but not correctly backing out the data. *Id.* Ms. Dunson admits that she made errors during her first month of employment with Hooven-Dayton. Dunson Aff., PageID 488. In view of what Ms. Monahan determined were Ms. Dunson's numerous job errors as well as the fact that Ms. Dunson had been trained by a temporary employee, Ms. Monahan arranged for Ms. Dunson to be retrained by two permanent employees. *Id.*, PageID 150. Ms. Monahan selected Jason Sipe and Kim Hester to train Ms. Dunson. *Id.*, PageID 150.

Mr. Sipe, who earned a bachelor's degree in accounting in 2006 and an M.B.A. in 2011, has been employed as a staff account in the accounting department at Hooven-Dayton since April 2007. Jason Sipe Affidavit, Jan. 20, 2012 (Sipe Aff.) (Doc. 30, Attachment 2 thereto; PageID 199). Mr. Sipe was familiar with the duties Ms. Dunson was responsible for performing in her position as Accounting Data Entry Clerk. *Id.* Mr. Sipe noticed in June and July 2009 that the paperwork which Ms. Dunson prepared contained errors including missing data, incorrect dates and employee numbers, and attempts to correct entries by reversing the entries but not correctly backing out the data. *Id.* Ms. Monahan requested that Mr. Sipe assist Ms. Hester in retraining Ms. Dunson in an effort to improve her work performance. *Id.,* PageID 200. At the end of July 2009 Mr. Sipe noted that Ms. Dunson was repeating many of the same mistakes she had made prior to re-training and Mr. Sipe, along with Ms. Hester, advised Ms. Monahan that Ms. Dunson's work was not improving or acceptable. *Id.* Nevertheless, Mr. Sipe and Ms. Hester continued to re-train Ms. Dunson for a few more weeks through August 31, 2009, but Mr. Sipe noted that she continued to

repeat the same errors and that her work performance did not improve. *Id*, PageID 200.

Ms. Hester has been employed by Hooven-Dayton as a payroll specialist and an accounting data entry clerk in the accounting department since 2007. Kim Hester Affidavit, January 20, 2012 (Hester Aff.), (Doc. 30, Attachment 3 thereto; PageID 202). Ms. Hester was familiar with the job duties that Ms. Dunson was to perform. *Id.* When Ms. Dunson began working for Hooven-Dayton, Ms. Hester assisted her by completing some of the daily paperwork and at that time, she noted that Ms. Dunson was making errors. *Id.* In early July, Ms. Monahan asked Ms. Hester to help retrain Ms. Dunson which she did with Mr. Sipe. *Id.*, PageID 203; Sipe Aff., PageID 200. At the end of July 2009 Ms. Hester and Mr. Sipe advised Ms. Monahan that the quality of Ms. Dunson's work was not improving or acceptable and Ms. Monahan requested that Ms. Hester and Mr. Sipe continue to retrain Ms. Dunson. Hester Aff., PageID 203; Sipe Aff., PageID 200. Ms. Hester continued to work with Ms. Dunson through August 13, 2009, on an almost daily basis, and she observed that Ms. Dunson continued to repeat the same errors and that her work performance did not improve. *Id.*; Monahan Aff., PageID 151. Ms. Hester informed Ms. Monahan of her observations. Hester Aff., PageID 203.

In early August 2009 Hooven-Dayton management personnel informed Ms. Monahan that the data entry and daily paperwork duties were being transferred from the Accounting Department to the Operations/Production Department and Ms. Monahan advised the accounting staff including Ms. Dunson. Monahan Aff., PageID 151. Hooven-Dayton was eliminating the Accounting Data Entry Clerk position and creating a new degreed accounting position. *Id.* By the end of August 2009 Ms. Monahan determined that Ms. Dunson's work product had not improved and she continued to make errors. *Id.* Ms. Monahan determined that Ms. Dunson's multiple and

continued errors impacted inventory which created a potential risk of over-purchasing or under-purchasing material and was jeopardizing Dayton-Hooven's inventory system as well as its overall stability. *Id.*

On August 14, 2009, Ms. Monahan terminated Ms. Dunson's employment based on her poor job performance and because Hooven-Dayton was eliminating the data entry position in the accounting department. *Id.*, PageID 152. At the time Hooven-Dayton terminated her employment, Ms. Dunson was still in her ninety-day probationary period. *Id.* Hooven-Dayton in fact eliminated the data entry position in the accounting department and did not hire a replacement for Ms. Dunson. *Id.* Hooven-Dayton transferred the duties that Ms. Dunson had been performing from the Accounting Department to the Operations Department under a newly created degreed position, Operations Data & Inventory Control Manager. *Id.* Hooven-Dayton created that new position in November, 2009. *Id.*; Affidavit of Christopher Che[2], Dec. 22, 2011, (Che Aff.)(Doc. 30 Attachment 4 thereto; PageID 206).

During her term of employment with Hooven-Dayton, Ms Dunson never complained to Ms. Monahan or to Christopher Che, President of Hooven-Dayton about any racial harassment at Hooven-Dayton. Monahan Aff., PageID 152; Che Aff., PageID 206.

Ms. Dunson admits that she made errors during her employment with Hooven-Dayton. Dunson Aff., PageID 488. However, Ms. Dunson's position is that she made some of the errors during her very first month of employment and others she had not come across during three weeks of training. Dunson Aff., PageID 488. Ms. Dunson describes the errors she made as "human errors" and claims that some of the documents she has received reveal errors committed prior to the

---

[2] Christopher Che has been President of Hooven-Dayton since February, 2007.

time Hooven-Dayton employed her. *Id.*

Title VII makes it an unlawful employment practice for an employer to "discharge any individual, or otherwise to discriminate against any individual ... because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). A plaintiff may establish racial discrimination through the use of direct evidence, or by introducing circumstantial evidence using the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) as modified by *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248 (1981).

To establish a *prima facie* case of discrimination under Title VII, plaintiff must show that (1) she was a member of a protected class; (2) she was discharged; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class or treated differently than similarly situated "nonprotected" employees. *McDonnell Douglas Corp*, 411 U.S. at 802; *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir.2008). If plaintiff makes this showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for having terminated plaintiff. *McDonnell Douglas*, 411 U.S. at 802–03. If the defendant meets this requirement, the final burden of persuasion rests with plaintiff to show that the proffered reason is actually a pretext for unlawful discrimination. Plaintiff can carry this burden by showing that the stated reason for termination "(1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008) *citing Imwalle v. Reliance Med. Products, Inc.,* 515 F.3d 531, 545 (6th Cir. 2008)(*citing Manzer v. Diamond Shamrock Chemicals, Co.,* 29 F.3d 1078, 1084 (6th Cir., 1994, overruled on other grounds, *Geiger v. Town Automotive,* 579 F.3d 614 (6th Cir. 2009)). However, the plaintiff may also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's

decision "to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir.2003) (en banc); see also *Burdine*, 450 U.S. at 259 ("The fact that a court may think that the employer misjudged the qualifications of applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination.").

In applying this framework in the context of a motion for summary judgment, the question at each stage of the analysis is whether the party with the burden of production has presented sufficient evidence to create a genuine issue of material fact. *Provenzano v.. LCI Holdings, Inc.*, 663 F.3d 806, 811–12 (6th Cir.2011). Plaintiff retains the burden of persuasion that she was the victim of race discrimination. *Id*. at 812.

Ms. Dunson has satisfied the first two prongs of *McDonnell-Douglas*. That is, she is a member of a protected class and she was discharged. In spite of Ms. Dunson's admissions that she made errors on the job, for purposes of this motion only the Court will assume *arguendo* that Ms. Dunson has satisfied the third *McDonnell Douglas* prong and that she was qualified for the position she held with Hooven-Dayton. The question, then, is whether Ms. Dunson has satisfied the fourth prong of *McDonnell Douglas* and established that she was replaced by a person outside the protected class or treated differently than similarly situated "nonprotected" employees. Ms. Dunson has failed on this point.

As noted above, Ms. Monahan testified in her Affidavit that as early as August 2009 Hooven-Dayton planned to transfer the paperwork duties from the Accounting Department to the Operations/Production Department, that the position that Ms. Dunson held was being eliminated,

and Hooven-Dayton was creating a new degreed position instead. Mr. Che testified similarly in his Affidavit. Ms. Dunson has produced absolutely no Rule 56 admissible evidence that opposes that testimony. In other words, Ms. Dunson has failed to establish not only that she was replaced, but that she was replaced by an individual outside the protected class. Therefore, Ms. Dunson has failed to establish a *prima facie* case of race discrimination for purposes of Title VII.

In her *pro se* pleading, Ms. Dunson raises several points which this Court will address.

Ms. Dunson claims that Ms. Monahan's comment during the interview process that Dayton-Hooven was "hiring Blacks because Hooven-Dayton was trying to get government grants" was a discriminatory remark establishing racial animus. This Court disagrees.

To determine if statements are "relevant" as direct evidence of discrimination or are merely "stray remarks," courts generally consider: (1) whether the remarks were made by the decision maker or by an agent uninvolved in the challenged decision; (2) whether the remarks were isolated or part of a pattern of biased comments; (3) whether the remarks were made close in time to the *challenged* decision; and (4) whether the remarks were ambiguous or clearly reflective of discriminatory bias. *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir.1994)(emphasis supplied).

In balancing these factors, this Court concludes that the comment Ms. Monahan made about Hooven-Dayton hiring Blacks was a stray remark which is not direct evidence of discrimination. First, it is true that Ms. Monahan made the remark and that she was the hiring decision maker. However, the evidence does not establish that Ms. Monahan's remark was a part of a pattern of biased comments or that it was clearly reflective of discriminatory bias. More

importantly, however, Ms. Monahan made the remark during the employment interview process and Hooven-Dayton hired Ms. Dunson as a result of that process. In other words, Ms. Monahan did not make the stray remark during or close to the time of the *challenged* employment decision. Ms. Dunson states in her Affidavit that "After working with Jennifer Monahan, it appeared very obvious that she was not happy about having to hire blacks." Dunson Aff., PageID 488. However, Ms. Dunson does not support this impression with any testimony of observable behavior by Ms. Monahan from which she reached that conclusion. In other words, Ms. Dunson's opinion, unsupported by facts which others could have observed and reported in the context of opposing the summary judgment motion, does not suffice as admissible evidence of discriminatory animus. Compare *Talley v. Bravo Pitino Restaurant Ltd*., 61 F.3d 1241 (6th Cir. 1995).

Next, Ms. Dunson essentially claims that Hooven-Dayton essentially admitted that it discriminated against her when it failed to oppose her application for unemployment benefits and, as a result, the Ohio Department of Job & Family Services, Office of Unemployment Compensation (Department) determined that Hooven-Dayton terminated her without good cause.

Under Ohio law, the Department's finding is not to be given collateral estoppel or res judicata effect in any separate or subsequent judicial proceeding. *Murray v. Kaiser Permanente*, 52 Fed.Appx. 725, 727, 2002 WL 31805454 *2 (6th Cir. 2002), *citing* Ohio Rev. Code Ann. § 4141.28( R ) (West 2000) (now codified at § 4141.281(d)(8)) and *Noyes v. Channel Prods., Inc*., 935 F.2d 806, 809 n. 1 (6th Cir.1991). Accordingly, the Department's decision has no bearing on Ms. Dunson's present case.[3]

---

[3] In addition, it appears that Ms. Dunson's position is not entirely supported by the documents she has submitted in opposition to the present Motion. Specifically, Ms. Dunson has submitted a "Notice of Eligibility Issue" which the Department sent to her on August 27, 2009, and which notes that, "[T]he following eligibility issue was raised: Discharge-**Unsatisfactory work performance***.*" (Doc. 37, Attachment 3 thereto [Exhibit C]; PageID

13

Finally, to the extent that Ms. Dunson has made a claim for a racially hostile environment, that claims fails.

To succeed on a claim of a racially hostile work environment, a plaintiff must demonstrate that: (1) she belonged to a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act. *Williams v. CXS Transportation Co., Inc,* 643 F.3d. 502, 511 (6th Cir. 2011), *citing Moore v. KUKA Welding Systems & Robot Corp.*, 171 F.3d 1073, 1078–79 (6th Cir.1999).

Ms. Dunson has satisfied only one of the *Williams/Moore* factors. While Ms. Dunson belongs to a protected group, she has failed to establish that she was subject to unwelcome harassment which was based on race and which was sufficiently severe or pervasive to alter the conditions of her employment. Additionally, Ms. Dunson has failed to establish that Hooven-Dayton was aware or should have been aware of any harassment. Indeed, Ms. Dunson has failed to contradict Ms. Monahan's and Mr. Che's uncontradicted affidavit testimony to the contrary.

The Court turns to Ms. Dunson's claim for intentional infliction of emotional distress.

Because this claim is a state law claim, the Court must apply Ohio law in determining if Ms. Dunson's allegations for intentional emotional distress are sufficient. 28 U.S.C. §1652; *Gasperini v. Center for Humanities, Inc.*, 528 U.S. 415, 427, n. 7 (1996); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

In order to state a claim for intentional infliction of emotional distress in Ohio, a

---

513)(emphasis in original).

plaintiff must allege that (1) defendants intended to cause emotional distress, or knew or should have known that their actions would result in plaintiff's serious emotional distress, (2) defendants' conduct was extreme and outrageous, (3) defendants' actions proximately caused plaintiff's emotional injury, and (4) plaintiff suffered serious emotional anguish. *Hanly v. Riverside Methodist Hospital*., 78 Ohio App.3d 73, 82 (1991) *citing Pyle v. Pyle*, 11 Ohio App.3d 31, 34 (1983); *see also, Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995).

There is nothing before this Court to support the conclusion that Hooven-Dayton intentionally discriminated against Ms. Dunson. Therefore, there were no actions that could have caused serious emotional distress to Ms. Dunson.

This Court has carefully considered Ms. Dunson's claims and pleadings particularly in light of the fact that she is a *pro se* litigant. However, for the foregoing reasons, this Court finds that there is no genuine issue of material fact and that Hooven-Dayton is entitled to judgment as a matter of law.

Accordingly, Hooven-Dayton's Motion for Summary Judgment (Doc. 30) is granted. The Clerk shall enter judgment in favor of Defendant Hooven-Dayton and against Plaintiff Selena Dunson dismissing the within Complaint with prejudice.

March 31, 2012.                                                        s/ **Michael R. Merz**
                                                                        United States Magistrate Judge

J:\Documents\Dunson SJM D&O.wpd